236 N.J. Super. 185 (1989)
564 A.2d 1222
GEORGE C. BYRNE, JR., A MINOR BY HIS GUARDIAN AD LITEM, FRANCINE BYRNE, AND FRANCINE BYRNE, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
FORDS-CLARA BARTON BOYS BASEBALL LEAGUE, INC., DEFENDANT, AND DENNIS BONK, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 19, 1989.
Decided October 4, 1989.
*186 Before Judges PRESSLER, LONG and LANDAU.
James J. Dunn argued the cause for appellants (Levinson, Axelrod, Wheaton & Grayzel, attorneys; Richard J. Levinson, of counsel; Richard J. Levinson and James J. Dunn, on the brief).
Salvatore P. DiFazio argued the cause for respondent (Golden, Rothschild, Spagnola & DiFazio, attorneys).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
In evident response to the increasing cost of liability insurance and, in some instances the unavailability of liability insurance, for volunteer athletic coaches, managers and officials of nonprofit sports teams,[1] the Legislature, by L. 1986, c. 13, adopted N.J.S.A. 2A:62A-6, amended by L. 1988, c. 87, which affords those volunteers immunity from tort liability subject to the conditions and exceptions specified therein. This appeal from a summary judgment requires us to construe paragraph (c) of the Act, which conditions the availability of the immunity, to some degree at least, upon the volunteer's participation in a safety and training program.
The facts relevant to the issue before us are not in dispute. In the spring of 1986, plaintiff George C. Byrne, Jr., then 11 years old, was enrolled in the Fords-Clara Barton Baseball League, Inc. The League, while not affiliated with Little League Baseball, Inc., is nevertheless similarly organized, structured and conducted, offering inter-team competitions for similarly aged youngsters. Defendant Dennis Bonk was the coach of the team to which the infant plaintiff was assigned. On May 13, 1986, the day after the effective date of N.J.S.A. 2A:62A-6, Bonk instructed plaintiff to "warm-up" the pitcher. *187 Although plaintiff was wearing most of the catcher's special protective gear, he was not, in violation of the League's rules, wearing a catcher's mask. During the warm-up, he was struck in the eye by a pitched ball, sustaining the injury which is the gravamen of this complaint. The complaint charged Bonk both with ordinary negligence and with "willful, wanton, reckless and gross" negligence.
Bonk's motion for summary judgment dismissing the complaint as to him relied on N.J.S.A. 2A:53A-7 (charitable immunity) as well as on N.J.S.A. 2A:62A-6. The trial judge ruled that N.J.S.A. 2A:53A-7 was inapplicable to the claim against Bonk, as opposed to the League, because of its express exception of "agents or servants" from the immunity it affords. Bonk does not challenge that ruling on this appeal.
With respect to the applicability of N.J.S.A. 2A:62A-6, both plaintiff and this defendant relied on paragraph (c), which prior to its 1988 amendment provided in full as follows:
Nothing in this section shall be deemed to grant immunity to any person causing damage by his willful, wanton, or grossly negligent act of commission or omission, nor to any coach, manager, or official who has not participated in a safety orientation and training program established by the league or team with which he is affiliated.
At least for purposes of the summary judgment motion, Bonk conceded that he had never participated in a safety orientation or training program, and the reason he had not was the League's failure to have established one.
The issue then is whether paragraph (c), as originally adopted, required participation as a condition of immunity only if the league or team had established a safety and training program or if, to the contrary, the legislative intention was to mandate the establishment of a program as a quid pro quo, as it were, for the immunity, thus granting it only to those volunteers who had actually participated in such a program. The trial court judge declined to read the statute as requiring the establishment of a safety and training program for volunteers, concluding therefore that a volunteer who had had no *188 training in safety because there was no program for him to attend was fully entitled to the statutory immunity. Accordingly, it entered partial summary judgment dismissing the ordinary negligence claims against Bonk.[2] We granted plaintiff's motion for leave to appeal and now reverse.
The direct legislative history is both sparse and inconclusive. The bill, A-2398, which was finally adopted as L. 1986, c. 13, had been first introduced and passed in the Assembly, whose version of paragraph (c) excepted only willful, wanton, or grossly negligent acts. The provision respecting safety and training programs was added by the Senate in its version of the bill, S-1678, which also added paragraphs (d), (e) and (f), all of which further limit and condition the immunity afforded by the Assembly bill.[3] The Statement accompanying the Senate version is not particularly helpful in construing its intention since, in explaining the addition to paragraph (c), it uses exactly the same verbiage as the statutory text.
We recognize that there is an ambiguity in the manner in which the operative clause of paragraph (c) was drawn. Normally that ambiguity would have required us to determine, without benefit of express legislative explication, whether the general legislative purpose to accord the immunity was meant to prevail over the safety concerns expressed by that paragraph or not. We need not, however, engage in that debate since the Legislature, by its 1988 amendment of paragraph (c), left no doubt that its original intent had been to condition the immunity *189 upon the volunteer's actual participation in an appropriate program.[4]
By L. 1988, c. 87, the originally adopted single-section paragraph (c) was replaced by this two-section paragraph (c):
(1) Nothing in this section shall be deemed to grant immunity to any person causing damage by his willful, wanton, or grossly negligent act of commission or omission, nor to any coach, manager, or official who has not participated in a safety orientation and training skills program which program shall include but not be limited to injury prevention and first aid procedures and general coaching concepts.
(2) A coach, manager, or official shall be deemed to have satisfied the requirements of this subsection if the safety orientation and skills training program attended by the person has met the minimum standards established by the Governor's Council on Physical Fitness and Sports in consultation with the Bureau of Recreation within the Department of Community Affairs, in accordance with rules and regulations adopted pursuant to the "Administrative Procedure Act," P.L. 1968, c. 410 (C. 52:14B-1 et seq.).
The 1988 version does more than define, qualify, and standardize the prescribed safety program. In our view, the text of paragraph (c)(2), in its reference to a volunteer being "deemed to have satisfied the requirements of this subsection" (emphasis added), makes plain that actual program attendance is the unequivocal prerequisite for entitlement to the immunity. We are further persuaded that this was the legislative intention from the outset.
We base this conclusion first on public policy considerations. We do not believe that in initially prescribing participation in a safety program, the Legislature meant to provide a disincentive to the establishment of such programs by charitably organized leagues and teams  and surely a disincentive is implicit in a scheme in which a coach or manager can obtain immunity against ordinary negligence by the simple expedient of the league's failure to instruct him on matters of safety. Rather, we are convinced that the Legislature, responding to a perceived *190 insurance crisis, concluded that all of the competing interests involved in the management of and participation in nonprofit athletic organizations could be most reasonably accommodated by encouraging the safety training of volunteer coaches and managers  not discouraging such training  and then protecting trained volunteers from ordinary negligence claims. Thus, the prior training was at the heart of the immunity concept. That being so, we are convinced that the Legislature never intended that the immunity would attach to an untrained volunteer simply because his league or team chose not to offer appropriate training.
Beyond that, we are also convinced that that construction of the original version of the statute has been expressly confirmed by the Senate Statement accompanying the 1988 amendment. That Statement starts with the observation that the amendment is intended to clarify the manner in which the volunteer coach, manager, or official can satisfy "the training program requirement of the `little league liability law,' P.L. 1986, c. 13...."[5] Thus, the Legislature itself thereby described the program referred to in the original Act as mandated rather than optional. The conclusion is, therefore, ineluctable that a volunteer coach who has not participated in a prescribed safety program, for whatever reason, is barred from reliance on the statutory immunity.
The partial summary judgment dismissing the ordinary negligence counts of the complaint against Dennis Bonk is reversed, and the matter is remanded to the trial court for further proceedings.
NOTES
[1] See, e.g., Legislative Summaries: Sports Law, 10 Seton Hall Legis. J. 332 (1987).
[2] The trial judge did not rule on the wanton and gross negligence claims, concluding that questions of fact were involved, and defendant did not seek leave to cross-appeal from that determination. It is therefore not before us. See R. 2:5-6(b).
[3] Paragraph (d) makes the immunity inapplicable "to any person causing damage as the result of his negligent operation of a motor vehicle." Paragraph (e) withholds the immunity from a person "permitting a sport competition or practice to be conducted without supervision." Paragraph (f) makes clear the Act's inapplicability to school coaches, managers, and officials.
[4] The trial court apparently did not consider the effect of the 1988 amendment and its legislative history on this interpretation problem of the 1986 Act. Nor did either counsel bring the amendment to the attention of the trial court or this court.
[5] Although the Act by its terms is not limited to the Little League or even to youngsters participating in nonprofit athletic organizations, the Act has been referred to by the Little League nomenclature because it was that context in which it was initially adopted.